# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **DONALD PATRICK JOSEPH ADRIAN, ET AL** | * | **CIVIL ACTION NO. 06-0455** |
| | * | **JUDGE JAMES** |
| **VERSUS** | | |
| | * | **MAGISTRATE JUDGE HAYES** |
| **ROBERT B. SELBE, ET AL** | | |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Dismiss (Doc. #36) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by defendants, FBI Special Agent Robert B. Selbe ("Selbe") and the United States (collectively "Defendants"). The motion is opposed. For reasons stated below, it is recommended that the Motion to Dismiss be **DENIED in part and GRANTED in part.**

## BACKGROUND

On October 8, 2004, plaintiffs filed a complaint in the United States District Court for the District of Columbia against Selbe, in his personal and official capacities, and the United States seeking compensatory and punitive damages. The complaint asserted claims for abuse of process and malicious prosecution against the United States and Selbe in his official capacity pursuant to the Federal Tort Claims Act, and a *Bivens*[1] claim against Selbe in his official and personal capacities. According to the plaintiffs, on November 19, 1997, Selbe swore out an affidavit in support of a search warrant (hereinafter "affidavit") before U.S. Magistrate Judge Roy S. Payne in Shreveport, Louisiana, to search and seize documents from the Center for Manufacturing and Robotic Sciences, the Institute for Manufacturing and Robotic Sciences, Icon Industrial Controls, Inc., and Zydecom, Inc. (hereinafter "companies"), in all of which the plaintiffs had an ownership

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), authorizes civil rights suits against federal employees or agents.

interest prior to the time the companies went out of business. The plaintiffs further contend that, on November 22, 1997, Selbe swore out a declaration in support of the government's application for a prejudgment writ of garnishment (hereinafter "declaration") to seize bank account assets of the Companies and plaintiff Adrian personally. The complaint states that both the search warrant and the prejudgment writ of garnishment were executed within ten days of November 22, 1997, and that several hundreds of thousands of dollars were garnished as a result of the declaration.

According to the plaintiffs,

> Both Selbe's Affidavit in support of the search warrant and . . . his Declaration for an application for a prejudgment writ of garnishment contained false accusations that Plaintiffs and their companies illegally used Hungarian labor to perform portions of the government contract in violation of the Buy American Act, violated the False Claims Act with respect to the use of that labor, owed damages in excess of $683,604.00 trebled to the amount of over $2,000,000.00, and violated the Truth in Negotiations Act.

Complaint ¶ 13. The plaintiffs contend that it was through this affidavit and declaration that Selbe caused a civil complaint for the above violations to be issued against the companies and Adrian. The complaint was filed on November 22, 1997, and consisted of claims for violation of the Buy American Act, the False Claims Act, the Truth in Negotiations Act, and a claim seeking to recover money paid under a mistake of fact. On January 9, 1998, the complaint was dismissed pursuant to a consent decree.[2]

Although the search/seizure and garnishment giving rise to the plaintiffs' claims took place in November of 1997, the plaintiffs contend that they did not know until August of 2003 that Selbe knew that his allegations in the affidavit and declaration were false because it was not

---

[2]Plaintiffs contend that they had no choice but to accept the consent decree because all of their bank assets and all of their documents and computer systems were seized as a result of the search and garnishment supported by Selbe's affidavit and declaration, respectively. Plaintiff's further contend that Selbe, through his falsities, caused the Department of the Army to cancel a multi-million dollar long term contract with the companies.

until that time that they received what they term the "smoking gun" document from Congressman Markey of Massachusetts. According to the plaintiffs, the "smoking gun" document is an FBI report authored by Selbe showing that he knew when he swore to the affidavit and declaration that his statements were false and deceptive. Following the receipt of this document, in December of 2003, the plaintiffs moved to unseal Selbe's affidavit, and on February 27, 2004, Magistrate Judge Payne ordered the affidavit released.

The plaintiffs' DC District Court complaint asserted FTCA claims for abuse of process, based on Selbe's alleged intentionally false statements in the declaration, and a claim for malicious prosecution, based on the alleged false statements in both the affidavit supporting the search warrant and the declaration. The complaint also asserts a *Bivens* claim against Selbe in his official and personal capacities.[3] On March 13, 2006, in response to a Motion to Dismiss filed by the defendants, the DC District Court dismissed the plaintiffs' FTCA claims against Selbe in his personal capacity and plaintiffs' *Bivens* claim against Selbe in his official capacity and, by extension, the United States, and transferred the plaintiffs' FTCA claims against the United States and *Bivens* claim against Selbe in his personal capacity to this Court due to improper venue.[4] Thereafter, the undersigned permitted the defendants to file a Motion to

---

[3]Plaintiffs' *Bivens* claim alleges that Selbe violated plaintiffs' Fourth Amendment rights because he knew or should have known that he had no probable cause for the affidavit in support of the search warrant or for his declaration in support of the garnishment order, and that he knew or should have known that the search application and the search warrant and its execution were over broad and unjustified. Plaintiffs further allege that Selbe seized more items from their offices than were authorized under the search warrant and that Selbe held plaintiffs Efteland and Achor against their will during the service of the search warrant. Finally, plaintiffs allege that Selbe violated their Fourth Amendment rights by calling, in advance of the execution of the search warrant, media cameras and crews to take photographs and videos of the search, and by searching for and seizing from plaintiffs' attorney's offices privileged information.

[4]The DC District Court chose, in the interest of justice, to transfer the case to this Court because it found that the statute of limitations would have prevented the plaintiffs from refiling

3

Dismiss addressing any issues presented in the original motion that were not resolved by the ruling or transfer. Accordingly, the defendants filed this Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), claiming that the plaintiffs' FTCA and *Bivens* claims are time barred, that plaintiffs have failed to state claims upon which relief may be granted for abuse of process and malicious prosecution, and that the plaintiffs' *Bivens* claim is barred by qualified immunity.

## LAW AND ANALYSIS

*A. 12(b)(6) Standard*

In assessing the merits of a motion to dismiss under Rule 12(b)(6), a court must assume that all factual allegations set forth in the complaint are true, and must construe those facts in the light most favorable to the plaintiff. *United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir 1994). "Despite the liberality of modern rules of pleading, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. 1981), *cert. granted, Weyerhaeuser Co. v. Lyman Lamb Co.*, 456 U.S. 971 (1982), *cert. dismissed*, 462 U.S. 1125 (1983). "While a complaint need not outline all the elements of a claim, the complaint must be comprehensible and specific enough to draw the inference that the elements exist." *Richards v. City of Weatherford*, 145 F.Supp.2d 786, 789 (N.D. Tex.) *aff'd*, 275 F.3d 46 (5th Cir. 2001) (citing *Walker v. South Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990)). If a complaint lacks an allegation regarding an essential element to obtain relief, dismissal should be granted. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). Moreover, "conclusory allegations and unwarranted

---

the case in this Court if it had been dismissed.

4

deductions of fact are not admitted as true" for purposes of a motion to dismiss and will not suffice to prevent a motion to dismiss. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Associated Builders' Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *see Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997). "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowery v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246-7 (5th Cir. 1997).

### B. Are the Plaintiffs' FTCA Claims Time Barred?[5]

The Federal Tort Claims Act "establishes a federal statute of limitations that applies irrespective of the relevant state limitations period." *In re Supreme Beef Processors, Inc.*, 2006 WL 2974120, *10 (5th Cir, Oct. 19, 2006) (Dennis, J., concurring). The Act mandates the following:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of a final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). "Although phrased in the disjunctive, 'this statute requires a claimant to file an administrative claim within two years [of accrual] *and* file suit within six months of its denial.'" *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001) (quoting *Houston v. United States Postal Serv.*, 823 F.2d 896, 902 (5th Cir. 1987)) (emphasis in original). "'It is well-settled that these limitation periods are jurisdictional,' and 'while substantive state law determines whether a cause of action exists, federal law determines when that claim accrues.'" *Waggoner v.*

---

[5]"When a successful affirmative defense such as prescription appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Mayo v. United States*, 1999 WL 594685, *1 (W.D.La. 1999).

5

*United States*, 95 Fed.Appx. 69, 71 (5th Cir. 2004).

"A cause of action under federal law accrues within the meaning of § 2401(b) 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Ramming*, 281 F.3d at 162. "Ascertaining [the plaintiff's] awareness of the existence of a possible cause of action has two elements: '(1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions.'" *Id.* (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995). "As to causation, [the plaintiff] need not have knowledge of fault in the legal sense for the statute to begin to run, but [the plaintiff] must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection ... or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between [the defendant's] acts and [the plaintiff's] injury." *Id.* at 163; *see also United States v. Kubrick*, 44 U.S. 111 (1979) (holding that a cause of action under the FTCA accrues when the plaintiffs becomes aware of his injury and its cause, not when the plaintiff determines that his injury was the result of negligence).

Therefore, in order to decide if the plaintiffs' FTCA claims for malicious prosecution and abuse of process are time barred, the undersigned must determine when such claims accrued. The plaintiffs contend that their abuse of process[6] and malicious prosecution claims did not accrue until August of 2003 at the earliest when they received the "smoking gun" document showing that Selbe intentionally submitted false statements in the declaration and affidavit.[7]

---

[6]According to the complaint, the plaintiffs' abuse of process claim is based solely on Selbe's allegedly false statements in the declaration supporting the application for writ of prejudgment garnishment.

[7]It is very difficult to determine from the complaint and the plaintiffs memorandum in opposition to the defendant's motion to dismiss exactly what date the plaintiffs are claiming is the accrual date of their claims: August of 2003 (when the "smoking gun" document was received) or

6

Regarding this issue, the undersigned finds that *Mayo v. United States*, 1999 WL 594685 (W.D.La. 1999), is instructive. In that case, the plaintiff brought a *Bivens* action claiming that the defendant, an IRS agent, commenced an investigation of him without probable cause and as a result of a vendetta against him. *Id.* at *2. The criminal and audit investigations that were the subject of the action concluded in March 1993 and December 1994, respectively. *Id.* at *1. However, the plaintiff did not file his action until January 1998. *Id.* at *2. This Court concluded that, according to federal law, the claim accrued in 1996 when the plaintiff was told by other revenue agents that the defendant had commenced the investigation without probable cause and because of a vendetta against him because, at that point, the plaintiff "knew or had reason to know of the injury which [was] the basis of the action." *Id. (quoting Burns v. Harris County Bail Bond Board*, 139 F.3d 513, 518 (5th Cir. 1998).

The facts of *Mayo* are very similar to those at bar. The sole basis for the plaintiffs' abuse of process and malicious prosecution claims are Selbe's alleged intentionally false statements in the affidavit and declaration. Therefore, until they acquired knowledge of these alleged intentional falsities, the plaintiffs had no knowledge of the injury upon which their claim is based. In order for a claim to accrue, "[a] plaintiff need not realize that a legal cause of action exists; a plaintiff need only be aware of the facts that would support a claim." *Cloud v. United States*, 126 F.Supp.2d 1012, 1021 (S.D.Tex. 2000) (citing *Piotrowski*, 51 F.3d at 516 (citing *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983)). Because both a malicious prosecution and an abuse of process claim require a showing of some type of intentional,

---

February of 2004 (when the affidavit was unsealed). For the purposes of the FTCA claims, the distinction is not important because the claims were timely filed regardless of which accrual date is used. However, the distinction is crucial to the timeliness of the plaintiffs' *Bivens* claim; therefore, the plaintiffs' argument that the claims accrued in February of 2004 will be addressed below in the discussion of such claim.

wrongful act,[8] without knowledge of Selbe's alleged intentional falsities, the plaintiffs had no facts to support their FTCA claims. Although the complaint states that the plaintiffs believed in 1997 that the information in the affidavit and declaration was erroneous, it also clearly states that it was not until August of 2003 that they received the "smoking gun" document allegedly showing that Selbe *knew* that his statements in the declaration and affidavit were false.[9] Since the undersigned must take this fact as true for the purposes of this motion, the plaintiffs' malicious prosecution and abuse of process claims did not accrue until August of 2003.

The defendants contend that the plaintiffs' abuse of process claim accrued on November 24, 1997, when the writ of garnishment was granted, and that the malicious prosecution claim, also based on the civil garnishment, accrued on February 10, 1998, when the garnishment action was dismissed by the government.[10] According to the defendants, the plaintiffs knew at the time of the garnishment that they had been injured by government actors yet, for approximately six years, they took no action until they filed administrative tort claims with the FBI in October of 2003. Therefore, argue the defendants, because they knew at the time of the garnishment and search/seizure that they had been injured and yet did not file their administrative claims with the FBI or move to unseal the affidavit until 2003, the plaintiffs failed to live up to their duty of diligent inquiry into the circumstances surrounding their injury.

The defendants rely on *Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001), which

---

[8] *See Almerico v. Dale*, 927 So.2d 586, 593 (La.App. 5 Cir. 2006); *Piazza v. Mayne*, 217 F.3d 239, 245 (5th Cir. 2002).

[9] It is the fact that Selbe allegedly intentionally submitted false information in the affidavit and declaration that is the gravamen of the plaintiffs' claims, not the erroneous nature of the information.

[10] In order for a malicious prosecution claim to accrue, the underlying criminal or civil proceeding must terminate in the plaintiffs favor. *See Heck v. Humphrey*, 512 U.S. 477, 489 (1994).

involved a dispute over when the appellant's malicious prosecution claim accrued. Following the appellants non-jury trial, the district judge granted the appellant's motion for acquittal and dismissal on the basis of prosecutorial misconduct. *Id.* at 160. In doing so, the judge cited numerous examples of misconduct on the part of the government. *Id.* However, although aware of this misconduct at the time of his acquittal in 1996, the appellant failed to present his administrative claim of malicious prosecution until 1999, which was well beyond the FTCA's two-year statute of limitations. *Id.* In affirming the district court's holding that the appellant's claim was time barred, the Fifth Circuit stated that "'the requirement of diligent inquiry imposes an affirmative duty on the potential plaintiff to proceed with a reasonable investigation in response to an adverse event.'" *Ramming*, 281 F.3d at 163 (quoting *Pacheco v. Rice*, 966 F.2d 904, 907 (5th Cir. 1992). The defendants cite this language as support for their argument that the plaintiffs failed to fulfill their duty of diligent inquiry; however, an examination of the facts in *Ramming* indicate that the case provides no such support.

The *Ramming* court found that the trial judge's recitation of examples of the prosecutor's misconduct left ". . . little doubt that, at the time of Appellant's acquittal, Appellant had ample evidence of essential facts which would support the possible existence of a claim for malicious prosecution" and that "[a]t the very least, Appellant was in a position 'to seek professional advice' from a lawyer or other expert, and 'then, with that advice, to conclude that there was a causal connection between [Appellee's acts] and [Appellant's] injury.'" *Id.* at 163 (quoting *Piotrowski*, 51 F.3d at 516). Therefore, concluded the court, "because Appellant knew or should have known of his injury and the causal connection between his injury and the Appellee's conduct as of the date of Appellant's acquittal," the claim accrued on such date. *Id.* However, the plaintiffs' complaint in this case clearly states that they were not aware of the facts supporting the possible

9

existence of their claims, i.e., Selbe's alleged intentional falsities, until August of 2003. Furthermore, there is nothing in the complaint to indicate that the plaintiffs should have known of such prior to that time.[11]

"While a statute of limitations defense may be raised in a motion to dismiss under Fed.R.Civ.P 12(b)(6), such a motion should not be granted unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Abdul-Alim Amin v. Universal Life Insurance Co. of Memphis, TN*, 706 F.2d 638, 641 (5th Cir. 1983). The complaint states that it was not until August of 2003 that the plaintiffs became aware that Selbe allegedly intentionally lied in the declaration and affidavit, and it is from these alleged intentional falsities that the plaintiffs' claims stem. Therefore, according to the complaint, prior to August 2003 the plaintiffs were aware of no facts supporting their claims. For purposes of this motion, this Court is not permitted to go behind the pleadings to determine whether the plaintiffs had a duty to investigate or whether they should have known prior to August 2003 of Selbe's alleged intentional falsities. Thus, while this court expresses no opinion regarding whether the plaintiffs' allegations or proof would be sufficient to withstand a motion for summary judgment, for the purposes of this motion, the pleadings indicate that such claims accrued in August of 2003.

In order to comply with the FTCA, the plaintiffs were required to file an administrative claim within two years of such date and file suit within six months of its denial. *Ramming*, 281

---

[11]The defendants argue that, because the plaintiffs received the declaration in 1997 and then did not move to unseal the affidavit until December of 2003, they failed to exercise due diligence. However, the complaint clearly states that the "smoking gun"document was what showed the plaintiffs that Selbe allegedly intentionally lied, not the affidavit or declaration. Furthermore, the defendants have provided no support for the notion that the content of the affidavit and declaration should have put the plaintiffs on notice of the possibility that Selbe intentionally lied.

F.3d at 162. Plaintiffs Adrian and Efteland filed their administrative claims with the FBI on October 9, 2003, and plaintiff Achor filed his claim on October 31, 2003, both of which were within two years of August 2003. Those claims were denied on April 9, 2004, and June 14, 2004, respectively. Because the plaintiffs filed the current action in the United States District Court for the District of Columbia on October 8, 2004, within six months of the FBI's denial of their claims, the plaintiff's claims were timely filed.[12] Therefore, the defendants motion to dismiss on this ground should be DENIED.

*C. Is the Plaintiffs' Bivens Claim Time Barred?*

With regard to a *Bivens* claim, there is no federal statute of limitations. *McCall v. U.S. Dept. of Justice*, 2006 WL 83456, *3 (W.D.La. Sept. 2, 2006) (citing *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993)). Therefore, "[t]he period of limitations for a Bivens action is borrowed from the general tort law of the state in which the action is brought." *Mayo v. United States*, 1999 WL 594685, *1 (W.D.La. August 17, 1999) (citing *Pena v. United States*, 157 F.3d 984, 987 (5th Cir. 1998); *Gaspard v. United States*, 713 F.2d 1097, 1102 n.11 (5th Cir. 1983))). "In Louisiana, that period is the one year provided in La.C.C.P. art. 3492." *Mayo* at *1; *See also*

---

[12]Because the FTCA contains its own statute of limitations rather than one borrowed from the forum state, "[p]rovisions of state law which normally have the effect of tolling statutes of limitation . . . are not given that effect when the claim is under [the FTCA]." *Childers v. United States*, 442 F.2d 1299, 1303 (5th Cir. 1971). Therefore, plaintiffs cannot take advantage of Louisiana's law stating that, when an action in filed in an improper venue, the period of prescription is tolled when the defendant is actually served with process. *Calhoun v. Ford*, 625 F.2d 576, 577 (5th Cir. 1980); *see also Washington v. Breaux*, 782 F.2d 553, 554 (5th Cir. 1986). However, the Supreme Court has held that, when a federal statute of limitations is involved, the statute of limitations is tolled when the plaintiff files a timely action and serves the defendant with process, although it is later determined that the action was filed in an improper venue. *Burnett v. New York Central Railroad Comp.*, 380 U.S. 424 (1965). Therefore, because the plaintiffs filed suit in the DC district court and served the defendants with process within six months of the FBI's denial of their administrative claims, the statute of limitations was tolled.

11

*Alford v. United States*, 693 F.3d 498, 499 (5th Cir. 1982). "As a corollary to this rule, state tolling provisions are also used in *Bivens* actions." *Lopez-Vences v. Payne*, 74 Fed.Appx. 398, 398 (5th Cir. 2003) (citing *Gartrell*, 981 F.2d at 257)). "Federal law, however, is used to determine when a cause of action accrues." *Id.* Again, under federal law, "'a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action,'" and this awareness consist of the plaintiff's knowledge of the existence of the injury and the connection between the injury and the defendant's actions. *McCall* at *3 (quoting *Brown*, 188 F.3d at 589-590).

With regard to the plaintiffs' *Bivens* claim, there are certain facets of the claim that appear to be based on the alleged falsities in the affidavit and there are certain facets that seemingly have no connection to the alleged falsities, such as the claim that the search warrant itself was over broad, the claim that more items were seized than were authorized in the warrant, and the claim that the plaintiffs were held against their will during the execution of the warrant). Therefore, it stands to reason that the latter claims accrued in November of 1997 when the search and seizure took pace because the plaintiffs were aware at that time of their injury and of Selbe's connection to such injury because Selbe was the officer who executed the search and seizure. In their opposition memorandum, the plaintiffs seem to argue that Selbe's alleged intentional falsities underpin all of the facets of their *Bivens* claim.

However, even assuming that the alleged falsities are the basis of the entire *Bivens* claim, the above discussion of the accrual date of the plaintiffs FTCA claims indicates that, according to federal law, the *Bivens* claim accrued at the latest in August of 2003 when the plaintiffs received the "smoking gun" document. Therefore, it is axiomatic that the plaintiffs had until August of

2004 to file their claim, but did not file in the DC district court until October 8, 2004. Although, as was previously mentioned, Louisiana law holds that the statute of limitations is tolled by filing an action in an improper venue so long as the defendant is served with process within the prescriptive period, *Calhoun*, 625 F.2d at 577, the DC district court action was not filed until after the prescriptive period had run; therefore, the defendants could not have been served with process within one year from the time the plaintiffs *Bivens* claim accrued.

In order to avoid this conclusion, the plaintiffs contend that the cause of action did not accrue until February of 2004 when the affidavit was unsealed, at which point the plaintiffs were certain that Selbe had lied in the affidavit. However, this argument inconsistent with both the plaintiffs' complaint and the timing of their administrative claims filed with the FBI. The complaint states the "smoking gun" document received by them in August of 2003 "showed that Defendant Selbe knew, when he swore to the affidavit in support of the search warrant . . ., that his statements were false and deceptive, amounting to perjury." Complaint ¶ 17. Therefore, by their own admission, the plaintiffs were aware in August of 2003 of the causal connection between their injury and Selbe's alleged actions and of the facts supporting their claims. *See Mayo* at *2. This is bolstered by the fact that the plaintiffs filed their administrative claims with the FBI, which were based in part on Selbe's alleged intentional falsities in the affidavit, in October of 2003.[13] Therefore, as of August 2003, the plaintiffs were aware of the injury that is the basis of their claims. *Id.* Yet, for whatever reason, the plaintiffs waited until December 4,

---

[13]*See* Exhibits 4,5, and 6 to plaintiffs' complaint. Documents appended to the complaint are treated as part of the complaint and may be considered by the Court in deciding a Rule 12(b)(6) motion. *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974); *see also* Fed. R. Civ. P. 10(c).

2003, three months after they received the "smoking gun" document and after they had filed their administrative claims, to attempt to unseal Selbe's affidavit.[14]  Although the content of the affidavit is a key element of the plaintiffs claims, the plaintiffs were aware of the importance of the affidavit well before they made any attempt to gain access to it.  Accordingly, the plaintiffs cannot, by their own dilatoriness, delay the accrual of their claims.  The plaintiffs' *Bivens* claim is time barred and should be **DISMISSED** on this ground.

### D. Does the Plaintiffs' Complaint State Claims For Which Relief May be Granted For Malicious Prosecution and Abuse of Process

The defendants argue that, even assuming that the plaintiffs FTCA claims were timely filed, the plaintiffs have not sufficiently stated FTCA claims for abuse of process and malicious prosecution.  First, in order to prove an abuse of process claim in Louisiana, a plaintiff must prove two elements: (1) an ulterior purpose; and (2) a willful act in the use of process not proper in regular conduct of proceeding.  *Almerico v. Dale*, 927 So.2d 586, 593 (La.App. 5 Cir. 2006). The plaintiffs seek to satisfy these elements by alleging in their complaint that Selbe, in his declaration for the application for a prejudgment writ of garnishment, falsely accused the companies and Adrian of illegally using Hungarian labor to perform portions of the government contract in violation of the Buy American Act, of violating the False Claims Act and the Truth in Negotiations Act, and of owing the government damages and civil penalties.  The plaintiffs further claim that Selbe's motive in doing so was to put the plaintiffs and their companies out of business, to provide a means for the government to cancel the plaintiffs' companies' contracts, and to allow the plaintiffs' government contracts to go politically influential Shreveport,

---

[14]*See* Memorandum Order, Magistrate Judge Roy S. Payne, United States District Court for the Western District of Louisiana.

Louisiana businesses.

The defendants argue that the plaintiffs have failed to satisfy the "willful act" element because they make only general sweeping allegations, failing to state which statements in Selbe's declaration are false; therefore, argue the defendants, it is impossible to respond to these allegations. However, "[n]either 'notice pleading' requirements nor the standards which govern dismissals under Rule 12(b)(6) require a claimant to set out in detail the facts upon which he basis his claim." *Williams v. United Credit Plan of Chalmette*, 526 F.2d 713, 714 (5th Cir. 1976). "Pretrial procedures such as summary judgment and the motion for a more definite statement are the appropriate devices to narrow the issues and disclose the boundaries of the claim and defense." *Id.* Therefore, given the liberal "notice pleading" requirements, the allegations in the complaint that Selbe falsely accused the companies and Adrian of illegally using Hungarian labor to perform portions of the government contract in violation of the Buy American Act, of violating the False Claims Act and the Truth in Negotiations Act, and of owing the government damages and civil penalties are sufficient to state a claim upon which relief may be granted.[15] Therefore, the defendants' motion to dismiss on this ground should be **DENIED**.

---

[15]Furthermore, although the plaintiffs' complaint does not quote word for word the statements in the declaration which are alleged to be false, the language of the complaint is sufficient to indicate to which sections of the declaration the plaintiffs are referring. For example, the plaintiffs allege that Selbe falsely accused the companies and Adrian of illegally using Hungarian labor to perform portions of the government contract in violation of the Buy American Act. Selbe's declaration states the following: (1) former consortium employees stated that labor hours were charged to the TIME project for employees in Hungary; (2) a government official advised that the use of Hungarian labor violates the Buy American Act; (3) former consortium employees have also advised that Adrian made clear that he intended to use Hungarian labor because of the lower labor rates; and (4) numerous organizations have been created or used by the companies as a means of concealing employment of Hungarian labor as part of the TIME contract with the U.S. government. Declaration ¶¶ 7-9.
  The complaint also alleges that Selbe falsely accused the plaintiffs of violating the False

With regard to their malicious prosecution claim, the plaintiffs must prove six elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant; (3) a bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage. *Piazza v. Mayne*, 217 F.3d 239, 245 (5th Cir. 2002).

The defendants contend that the plaintiffs have not made a showing of the absence of probable cause or of the presence of malice. With regard to these elements, "[t]he crucial determination is whether [Selbe] had an honest and reasonable belief in the guilt of [the plaintiffs] at the time [he submitted the affidavit and declaration]." *Amos v. Brown*, 828 So.2d 138, 143 (La.App. 2 Cir. 2002). If the undersigned assumes, as it must, that the allegations in the plaintiffs complaint are true, then the complaint sufficiently alleges malice and a lack of probable cause. The complaint states that Selbe commenced or continued the civil complaint in that such complaint was based on the allegedly false information in his declaration and affidavit. Assuming such is true, the initiation of the civil complaint would be proven lacking in probable cause. Furthermore, because "malice exists where the charge is made with reckless disregard to whether it is false or not," the plaintiffs' allegation that Selbe intentionally lied in the declaration and affidavit is sufficient to allege the element of malice. *Id.* (citing *Whittington v. Gibson*

---

Claims Act. Although the declaration does not explicitly state that the plaintiffs violated such act, it does state that, according to a DCAA official, the plaintiffs submitted vouchers for Hungarian labor that were inadvertently paid because one of the plaintiffs' companies did not disclose to the DCAA that Hungarian labor was being billed and the company billed such labor in the same manner as other labor authorized under the contract so that it was not apparent when reviewing the vouchers that Hungarian labor was being billed. Declaration ¶11.

16

*Discount Dept.*, 296 So.2d 375 (La.App. 2d Cir. 1974).[16]

The defendants next contend that the plaintiffs have failed to establish that the civil proceedings initiated by the government resulted in a bona fide termination in favor in their favor. The plaintiffs complaint states in conclusory fashion that the civil proceedings were terminated in the their favor;[17] however, the civil complaint was dismissed by the government only after the companies entered into a consent judgment in which the parties agreed to *settle* and *compromise* the claims according to the terms therein.[18] The resolution of civil proceedings by way of a settlement or compromise does not constitute a favorable termination. *See Strain v. Kaufman County District Attorney's Office*, 23 F.Supp.2d 685, 693 (N.D.Tex. 1998); *See also*, *Glission v. Biggio*, 74 So. 907, 910 (La. 1917) ("'A settlement or compromise after the commencement of the suit will preclude an action for malicious prosecution.'").

Plaintiffs Achor and Efteland were not named as defendants in the civil complaint; therefore, the only basis for their malicious prosecution claims is their status as owners and

---

[16] "'Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights.'" *Amos*, 828 So.2d at 143 (quoting *Miller v. East Baton Rouge Parish Sheriff's Dept.*, 511 So.2d 446, 453 (La. 1987).

[17] "[C]onclusory allegations and unwarranted deductions of fact are not admitted as true" for purposes of a motion to dismiss and will not suffice to prevent a motion to dismiss. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Associated Builders' Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *see Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997

[18] "The Court may take judicial notice of the contents of public records on a Rule 12(b)(6) motion." *Jefferson v. Lead Industries Association, Inc. et al.*, 930 F.Supp. 241, 244 n.1 (E.D.La 1996). The consent judgment stated that the writ of garnishment was terminated on the condition that the settling defendants (the plaintiffs herein) agreed to pay their creditors within 30 days of the entry of the judgment. The judgment further stated that, once such creditors were paid, the United States would file a Stipulation of Dismissal of the action and that such dismissal would be with prejudice. The civil suit was dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a) on February 10, 1998.

employees of the companies.[19]  Because the civil proceeding did not result in a termination favorable to the companies, and because Achor and Efteland's malicious prosecution claims derive from the companies' status as defendant in such proceedings, Achor and Efteland's malicious prosecution claims fail as a matter of law and the defendants' Motion to Dismiss on this ground should be **GRANTED**.[20]

Plaintiff Adrian, however, was named as a defendant in the civil proceeding. Furthermore, he was not a party to the consent judgment; rather, the claims against him were simply dismissed with prejudice.  Therefore, the complaint establishes that the civil proceeding resulted in a bona fide termination in Adrian's favor and the defendants' Motion to Dismiss as its pertains to Adrian's malicious prosecution claim should be **DENIED**.

Therefore, for the reasons stated above, it is recommended that defendants' Motion to Dismiss (Document No. 36) **be GRANTED as to the plaintiffs' *Bivens* claim and Plaintiffs Achor and Efteland's malicious prosecution claims, and DENIED as to the plaintiffs' FTCA abuse of process claims and Plaintiff Adrian's malicious prosecution claim.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten**

---

[19]Efteland claims damages based on lost income, his ownership interest in the companies, his share of the companies' seized bank accounts, and emotional and physical distress.  Achor claims damages based on his ownership interest in the companies, lost past and future income, and extreme emotional and physical distress.

[20]Furthermore, in the consent judgment, the settling defendants agreed not to sue the United States, or its agents and employees, with respect to any matters addressed by the complaint, and the judgment specifically states that it shall not be used by the United States or the settling defendants in any other judicial proceeding except to enforce the terms of judgment.

**(10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 8th day of November, 2006.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE