**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| DONALD PATRICK JOSEPH ADRIAN, ET AL. | CIVIL ACTION NO. 06-455 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| ROBERT B. SELBE, ET AL. | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss and/or Motion for Summary Judgment (Record Document 84) filed by the United States of America ("United States"). The United States seeks dismissal of the plaintiffs' abuse of process and malicious prosecution claims. See id. The plaintiffs, Donald Patrick Joseph Adrian ("Adrian"), Jon Norquist Efteland ("Efteland"), and Donald Paul Achor ("Achor"), opposed the motions. See Record Document 90.

Despite other pending motions, the Court first considered the Motion to Dismiss and/or Motion for Summary Judgment, which was filed pursuant to Rule 12(b)(1) and Rule 56. In the motion, the United States argued that the plaintiffs' tort claims are time barred. Based on the following, the Court concluded that the motion should be granted on this ground, resulting in dismissal without prejudice of the plaintiffs' tort claims. Further, because the Court has determined that it lacks subject matter jurisdiction, it will not address the Partial Motion to Dismiss (Record Document 79) or the other arguments presented in the Motion to Dismiss and/or Motion for Summary Judgment, as these arguments attack the merits of the plaintiffs' tort claims.¹ Likewise, the Court will not

---

¹This Court considered the United States' jurisdictional attack before addressing its attack on the merits of the plaintiffs' abuse of process and malicious prosecution tort claims, thus preventing "a court without jurisdiction from prematurely dismissing a case with

address the pending Motion in Limine (Record Document 86).

**I.     BACKGROUND.**

The plaintiffs filed suit asserting abuse of process and malicious prosecution claims against the United States and Federal Bureau of Investigation ("FBI") Special Agent Robert Selbe ("Selbe") in his official capacity pursuant to the Federal Tort Claims Act ("FTCA") and a Bivens claim against Special Agent Selbe in his official and personal capacities. See Record Documents 1 & 49. In response, the defendants filed a motion to dismiss which resulted in the dismissal of the Bivens claim and Efteland's and Achor's malicious prosecution claims. See Record Document 63. The defendants' motion to dismiss was denied as to the plaintiffs' abuse of process claims and Adrian's malicious prosecution claim. See id.

The Magistrate Judge's Report and Recommendation issued on November 8, 2006 gave a detailed account of this case's background; thus, it bears no repeating. See Record Document 49 at 1-4. The key factual allegations for purposes of the instant Memorandum Ruling are set forth below.

On November 19, 1997, Selbe swore to an affidavit in support of a search warrant before United States Magistrate Judge Roy S. Payne in Shreveport, Louisiana to search and seize documents and computer hardware and software from the plaintiffs' business

---

prejudice." Cloud v. U.S., 126 F.Supp.2d 1012, 1017-1018 (S.D.Tex. 2000). A court's dismissal of a case due to lack of subject matter jurisdiction is not an adjudication of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. See id.

entities[2] in Shreveport, Louisiana. See Record Document 1, ¶ 8. On November 22, 1997, Selbe swore out a declaration in support of the government's application for a prejudgment writ of garnishment to seize bank account assets of the companies and Adrian personally, allegedly in order to protect the plaintiffs' assets from being spent, hypothecated or hidden in order to ensure payment to the government for the alleged fraud on the government. See id., ¶ 9.

The plaintiffs allege that both Selbe's affidavit in support of the search warrant and his declaration in support of the application for a prejudgment writ of garnishment contained false accusations that the plaintiffs and their companies illegally used Hungarian labor to perform portions of the government contract in violation of the Buy American Act, the False Claims Act, and the Truth in Negotiations Act. See id., ¶ 13. In 1997, the plaintiffs believed that the affidavit had to be erroneous. See id., ¶ 16. Yet, they allege that it was not until February 2004, when Magistrate Judge Payne unsealed the affidavit, that they discovered that Selbe knew that the material facts alleged in the affidavit were intentionally false, misleading, and deceitful. See id. With respect to the declaration, the plaintiffs allege that they knew that the statements therein were not true once the documents were disclosed. See id., ¶ 17. Yet, they maintain that they did not discover until August 2003 that Selbe knew that the allegations in the declaration were false. See id. In August 2003, the plaintiffs received a "smoking gun" document, an FBI document (report) authored by Selbe, from Congressman Markey's office. See id. According to the

---

[2]The business entities included the Center for Manufacturing and Robotic Science, the Institute for Manufacturing and Robotic Science ("IMARS"), Icon Industrial Controls, Inc., and Zydecom, Inc. See Record Document 49 at 1.

plaintiffs, this document showed that Selbe knew, when he swore to the affidavit and the declaration, that his statements were false and deceptive, amounting to perjury. See id.

The plaintiffs filed administrative tort claims with the FBI on October 9, 2003 and October 31, 2003. See id., ¶ 7. The administrative tort claims were denied on April 9, 2004 and June 14, 2004. See id. The plaintiffs filed the instant lawsuit on October 8, 2004. See Record Document 1.

Prior to the filing of his administrative tort claim and the instant lawsuit, Adrian also filed two other lawsuits alleging that "others" were responsible for the Army canceling his government contract in October of 1997 and that "others" were responsible for the Army, through the United States, filing suit against him and his companies under the False Claims Act, Buy America Act, and Truth in Negotiations Act in November of 1997. The first lawsuit was filed in 1998 and the second in 1999. The allegations contained in each of the lawsuits will be set forth in more detail below.

## II. LAW AND ANALYSIS.

The FTCA provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). Although phrased in the disjunctive, Section 2401(b) "requires a claimant to file an administrative claim within two years [of accrual] and file suit within six months of its denial." Ramming v. U.S., 281 F.3d 158, 162 (5th Cir. 2001). The exhaustion requirement is a jurisdictional prerequisite to the filing of an action under the FTCA. See Gregory v. Mitchell, 634 F.2d 199, 204 (5th Cir. 1981). As a jurisdictional

prerequisite, the filing of the administrative claim cannot be waived. See id.

Here, the United States has moved to dismiss the plaintiffs' tort claims pursuant to Rule 12(b)(6) and/or Rule 56. The United States argues that this Court lacks subject matter jurisdiction over this matter because the plaintiffs' failed to file their administrative tort claims with the FBI within two years of their accrual, as required by Section 2401.

### A. Rule 12(b)(1) Standard and Rule 56 Summary Judgment Standard.

The United States challenges the Court's subject matter jurisdiction over this case. A motion to dismiss for lack of subject matter jurisdiction is properly brought pursuant to Rule 12(b)(1).[3] Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. See Stockman v. Fed. Election Comm'n, 138 F.3d 144, 151 (5th Cir.1998).

The Fifth Circuit recognizes a distinction between a "facial attack" and a "factual attack" upon a complaint's subject matter jurisdiction. See Rodriguez v. Tex. Comm'n on the Arts, 992 F.Supp. 876, 878 (N.D.Tex.1998), aff'd, 199 F.3d 279 (2000). "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. Id. Yet, if the defendant supports the motion with evidence, then the attack is "factual" and "no presumptive truthfulness attaches to the plaintiff's allegations, and the

---

[3]Federal Rule of Civil Procedure 12(b)(1) provides:

(b) Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

(1) lack of subject-matter jurisdiction.

existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.1981). Regardless of the nature of the attack, "[t]he plaintiff constantly bears the burden of proof that jurisdiction does exist." Rodriguez, 992 F.Supp. at 879 ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."). Here, the United States supports its Rule 12(b)(1) motion with evidence, thus invoking a factual attack upon the complaint.

Alternatively, the United States has also moved for dismissal of the case pursuant to Rule 56. Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

Regardless of whether it employs Rule 12(b)(1) or Rule 56 as the procedural mechanism, the Court finds that it lacks subject matter jurisdiction over the instant matter.

### B. The Plaintiffs' Tort Claims are Time Barred.

The United States argues that the plaintiffs' claims accrued in November 1997 (abuse of process claim) and in February 1998 (malicious prosecution claim). Specifically, the United States maintains that the abuse of process claim accrued on November 24, 1997, the date the garnishment was granted, as this was the date that the plaintiffs were allegedly "harmed" by Selbe's false declaration. It argues that the malicious prosecution claim accrued on February 10, 1998, the date the garnishment action was dismissed by the Government. Based on these accrual dates, the United States contends that the plaintiffs' administrative tort claims, which were filed with the FBI in 2003, were untimely because they were not filed within two years of the accrual of the abuse of process and malicious prosecution claims.

Conversely, the plaintiffs maintain that their claims did not accrue until August 2003, when they received the smoking gun document allegedly showing that Selbe knew, when he swore to the affidavit and the declaration, that his statements were false and deceptive. Based on this accrual date, both the administrative tort claims and the instant lawsuit would be timely.

Under the FTCA, the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured. See Piotrowski v. City of Houston, 51 F.3d 512, 516 (5th Cir. 1995). Awareness in this context "encompasses two elements: (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." Id.

It is not necessary for the plaintiff to realize that a legal cause of action exists in order for the limitations period to commence; instead, he need only know the facts that would support a claim. See id., citing Harrison v. U.S., 708 F.2d 1023, 1027 (5th Cir.1983) ("The plaintiff need not have knowledge of fault in the legal sense for the statute to begin to run, but she must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection . . . or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury."). Additionally, the "plaintiff need not have actual knowledge if the circumstances would lead a reasonable person to investigate further." Id., citing Jensen v. Snellings, 841 F.2d 600, 606 (5th Cir.1988) ("Under federal law, the limitations period commences when 'the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge' thereof.").

The timeliness issue was raised in earlier motion practice; however, at that stage of the litigation, the Court was not permitted to go behind the pleadings to determine whether the plaintiffs had a duty to investigate or whether they should have known prior to August 2003 of Selbe's alleged intentional falsities. At this stage, wherein the Court is permitted to go behind the pleadings, the Court finds that the plaintiffs knew as early as 1997 and 1999 that they had been "injured." Moreover, as evidenced by prior lawsuits filed, the plaintiffs also had knowledge of facts as early as 1998 and 1999 that would have lead a reasonable person to, at a minimum, seek professional advice, and then, with that advice, to conclude that there was a causal connection between the Selbe's acts and their injury.

In July 1998, Adrian filed a tort suit in state court alleging that the Biomedical Research Foundation of Northwest Louisiana and Charlie McBride had caused the Army not only to terminate the government contract with IMARS, but also to bring a frivolous and malicious lawsuit against IMARS. See Record Document 84, Exhibit E.

In September 1998, Adrian wrote a letter to Ruth Stark of the Defense Contract Management District stating:

> [T]here exists overwhelming evidence that the lawsuit brought by the [U.S.] Army against IMARS et al, myself, and the Hungarian companies . . . was the result of an illegal conspiracy launched by Thomas McWilliams, Frederick Laresen, Charles Oseicki of the Department of the Army and Charles McBride, the registered lobbyist for the Biomedical Research Foundation of Northwest Louisiana.

Id., Exhibit C-5. Adrian further alleged that "the result of the conspiracy was to bring a knowingly false and malicious lawsuit." Id.

In August 1999, Adrian filed a sealed complaint under the *qui tam* provision of the False Claims Act alleging that certain defendants[4] falsely accused him and IMARS of fraudulently using Hungarian labor to perform work on the government contract. See id., Exhibit F. In an amended complaint, Adrian maintained that the defendants caused the Department of Justice to procure a search warrant which was ultimately issued by Magistrate Judge Payne which led to the raid of the facilities of IMARS. See id. Adrian also alleged that these same defendants had caused the United States to file suit against him and his companies. See id.

The aforementioned information, namely the prior lawsuits, clearly evidences that

---

[4]The defendants included the Regents of the University of California and the Lawrence Livermore National Laboratory, Ronald Cochran, Anthony Chargin, and Robert Burleson. See Record Document 84, Exhibit F.

between 1997 and 1999, the plaintiffs knew some facts about their injuries and had actually begun investigating their injuries, with the aid of legal counsel, at that time. Specifically, it appears that since 1998, the plaintiffs have attempted to blame numerous parties, individuals, and companies for the identical deeds that they are now alleging against Selbe.

Moreover, while the plaintiffs contend that prior to August 2003 they were not aware that Selbe intentionally lied in the declaration and affidavit, they had in their possession a copy of Selbe's declaration, which contained much of the same allegations as the affidavit, since November 1997. The plaintiffs also admitted in their complaint that they believed in 1997 that the affidavit had to be erroneous and that they knew that the statements made in the declaration were not true once the documents were disclosed. At a minimum, it appears that this knowledge should have been enough for a reasonable person to seek professional advice as to the possible connection between Selbe's acts and the plaintiffs' injuries. Yet, the plaintiffs did not move to unseal the affidavit until December 2003, almost six years after they knew the allegations in the affidavit to be erroneous. Further, as the plaintiffs bear the burden of proof that jurisdiction does exist, the Court notes that the record is void of proof of unsuccessful attempts to obtain documents; information as to what specific documents were sought prior to August 2003; and/or any explanation as to why the plaintiffs waited until December 2003, two months after they filed their administrative tort claims with the FBI, to move for the unsealing of the affidavit in support of the search warrant. See Cloud v. U.S., 126 F.Supp.2d 1012, 1022 (S.D.Tex. 2000) ("[T]he FTCA only constitutes a limited waiver of the United States' sovereign immunity. The limitations provisions are 'the balance struck by Congress in the context of

tort claims against the Government; and [the Court is] not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims."). While it is clear that the plaintiffs secured some documents from Congressman Markey, the Court is left to wonder what other efforts, if any, were made to ascertain the truth as to what precipitated the 1997 seizure and garnishment.

In light of the foregoing, this Court cannot say that the FTCA limitations period of two years should have been tolled until the plaintiffs "got it right." To hold otherwise would lend support to the position that the plaintiffs' claims would never prescribe. Here, the record establishes that the plaintiffs had notice of facts in 1997-1999 that a false and malicious lawsuit was perpetrated against them. The Court finds that the exercise of due diligence and a reasonable investigation would have led to actual knowledge of Selbe's actions prior to August 2003. In fact, this Court finds that the plaintiffs knew, no later than 1999, of the existence of their injuries and had knowledge of facts that would lead a reasonable person to, at a minimum, seek professional advice, and then, with that advice, to conclude that there was a causal connection between Selbe's actions and their injuries. The plaintiffs failed to timely file their administrative tort claims, which should have been filed no later than two years after the accrual of their claims in 1999. Accordingly, the Motion to Dismiss and/or Motion for Summary Judgment is granted.[5]

---

[5] The plaintiffs contend that they "did proceed with a reasonable investigation but were thwarted by [the defendants]." Record Document 90 at 7. The plaintiffs further maintain that the defendants "do not claim what [the plaintiffs] should have done" and further note that Selbe requested that the affidavit in support of the search warrant be sealed. Id. These allegations appear to be the plaintiffs' attempt to invoke equitable tolling of the limitations period. The Court finds that such doctrine is inapplicable here, as the plaintiffs have simply failed to establish that the United States controlled the facts surrounding causation such that a reasonable person could not obtain the information even

### III. CONCLUSION.

Based on the foregoing, the Motion to Dismiss and/or Motion for Summary Judgment (Record Document 84) filed by the United States is **GRANTED**, as the Court finds that the plaintiffs' abuse of process and malicious prosecution claims are time barred.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 8th day of April, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

with a diligent investigation and/or that the United States or Selbe took active steps to suppress any information. See Cloud, 126 F.Supp.2d at 1022.